IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTONIO LEWIS, | : | CIVIL ACTION |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | |
| SUPERINTENDENT | : | |
| OBERLANDER, et al., | : | No. 21-1073 |
| Respondents. | : | |

**RESPONSE TO PETITION FOR A WRIT OF HABEAS CORPUS**

In 2013, a jury convicted Antonio Lewis of the attempted murder of Andy Love, among other offenses, and he is serving a sentence of 23 ½ to 58 years in prison for those offenses. In this *pro se* petition for federal habeas relief pursuant to 28 U.S.C. § 2254, Lewis claims that his constitutional rights were violated at his trial and at sentencing. But he is not entitled to any relief; his claims are procedurally defaulted, lack merit, or both. The Court should dismiss his petition with prejudice and without a hearing.

BACKGROUND

**I.   Antonio Lewis is convicted of the attempted murder of Andy Love.**

Antonio Lewis's trial began on October 29, 2013. The evidence showed as follows.[1]

On the night of August 12, 2011, Andy Love and his wife went with some friends to visit another friend, Sonny, in northeast Philadelphia. As they were hanging out and drinking, Love saw three men enter the house

---

1   This section is drawn from the trial court's summary of the facts except where otherwise noted. See Ex. A at 1–3 (*Commonwealth v. Lewis*, 2758 EDA 2014, slip op. (Pa. Super. Ct. Sept. 14, 2015)).

and begin speaking with Sonny; he believed they were supplying marijuana. One of these men walked up to Love and said: "You look like somebody I know." Love insisted he did not know him. The man pulled a gun and told Love to hand over his money. When Love laughed, the man said "it's not a joke" and shot Love in the leg. Love attempted to grab the gun from the man and punched him in the face, then turned to run from the house. While he was running away, he was shot again.

A police officer responded to a report of the shooting. He saw Love laying in the middle of the road, bleeding heavily. Two men approached the officer and said they were present at the time of the shooting. The first witness told the officer that Love had been robbed and shot, and gave the officer a description of the shooter.

Love's sister-in-law visited Love in the hospital, but could not speak to him immediately. After her sister (Love's wife), told her what had happened, she began looking through photos on the party host Sonny's Facebook page, as she knew Sonny from the neighborhood. In the hospital, she showed Love some pictures of Sonny with some of his friends. Love became teary-eyed and identified Lewis from one of those pictures as the man who had shot him. Love's wife, who had left the party before the shooting, also recalled seeing Lewis at the party. The sisters then showed the pictures to the police, and the sister-in-law gave a statement about her Facebook search. Love and his wife both identified Lewis in a photo array prepared by the police. N.T. 10/29/13 at 132–33; N.T. 10/30/13 at 66–67.

Two detectives asked Love to give their phone number to Sonny through Facebook. Sonny called the detectives, believing he was speaking to Love, and apologized for the incident, saying "it wasn't supposed to go down like that." The detective, posing as Love, asked Sonny to speak with

the police. Sonny called back half an hour later. He apologized again and then put another man on the phone. This man identified himself as "Tone," which is a nickname associated with Lewis on Facebook. Tone insisted it "wasn't supposed to go down like that."

The police arrested Lewis. Not long after, Lewis made several recorded phone calls from jail to friends and family. Apparently referring to the victim Andy Love, he repeatedly asked others to "stay on him. Yo, stay on Andy. Stay on him, get him." He also asked them to "get him to come off that." In the weeks following the shooting, Love's wife was contacted by Lewis's girlfriend about the incident. Although they had never met before, Lewis's girlfriend came to the Loves' residence five or six times. Love's wife was also approached by Lewis's mother, who wanted Love to speak to Lewis's attorney. Lewis's girlfriend also drove the Loves to the preliminary hearing.

At the preliminary hearing, Love testified that someone named "Charles" had shot him. N.T. 10/29/2013 at 124. In his trial testimony, however, he testified that he was sure that Lewis was the man who shot him. *Id*. at 125. He explained that he identified the shooter as "Charles" during the preliminary hearing because he felt pressured and threatened, and that Lewis's family had given him the name "Charles" to use. *Id*. at 124–25.

During closing arguments, the trial prosecutor argued that Lewis's post-arrest calls to his family demonstrated his guilt.

> I try to think about what I would do if I was accused of a crime I didn't commit. I think about what my first phone call would be, right? . . . My first phone call is going to be to my husband, and I am going to cry like a baby . . . That would by my first phone call. You know, I bet you something along those lines

>would be your first phone call, too, because that is what an innocent person says.

N.T. 10/31/13 at 45–47.

The jury convicted Lewis of attempted murder, aggravated assault, robbery, reckless endangerment, and a firearms violation.

At the beginning of the sentencing hearing, the parties determined that the sentencing guidelines were 114 to 480 months for the attempted murder, 78 to 96 months plus or minus 12 for the robbery, and 36 to 48 months plus or minus 12 for the firearms offense. N.T. 4/28/14 at 4–6. Members of Lewis's family came to the hearing to express their support, and some spoke to the trial court on his behalf. Near the conclusion of the hearing, the trial court said to Lewis:

>You chose, and this is really what bothers me about this case and what really goes on too often in this city, is that instead of these cases being decided in the courtroom and you yourself, Mr. Lewis, said this and thanked me for being fair. I just followed the rules and allowed witnesses to testify and appropriate evidence to come in and your attorney could fully represent you. But you didn't want that. Your family didn't want that. They didn't want the twelve to decide. They wanted it decided on the street so the case would go away and [the victim] couldn't be found and we would never have a trial . . . I see your family leaving because they don't want to listen to this part for whatever reason.

*Id*. at 35–36. The trial court sentenced Lewis to an aggregate sentence of 23 ½ to 58 years' imprisonment: nine and a half to 30 years for attempted murder, nine to 18 years for robbery, and five to ten years for the firearms violation.

The Pennsylvania Superior Court affirmed Lewis's convictions on direct appeal. Ex. A. The court denied Lewis's challenge to his sentence, concluding that the trial court stated adequate reasons for imposing a

sentence in the aggravated range of the sentencing guidelines and did not improperly consider Lewis's family's conduct in the courtroom during sentencing. *Id*. at 22–27. The court also rejected Lewis's argument that his conviction was against the weight of the evidence. *Id*. at 20–22. And it concluded that Lewis had waived his claim about improper comments during closing argument by failing to object or request a curative instruction. *Id*. at 19–20.

The Pennsylvania Supreme Court denied Lewis's petition for allocatur on April 27, 2016. *Commonwealth v. Lewis*, 138 A.3d 3 (Pa. 2016) (table). Lewis did not file a petition for certiorari with the U.S. Supreme Court.

## II.     Lewis is denied post-conviction relief in state court.

On July 24, 2017, Lewis filed a counseled petition for relief under Pennsylvania's Post Conviction Relief Act, 42 Pa.C.S. §§ 9541 *et seq*. The petition raised two claims of ineffective assistance of trial counsel. The PCRA trial court rejected the claims, and the state appellate court affirmed. Ex. B (*Commonwealth v. Lewis*, No. 3587 EDA 2018, slip op. (Pa. Super. Ct. Sept. 28, 2020)). The Pennsylvania Supreme Court denied allocatur on February 23, 2021. *Commonwealth v. Lewis*, 249 A.3d 497 (Pa. 2021) (table).

## III.    Lewis files this petition.

The next day, Lewis filed a *pro se* motion with this Court, seeking an extension of time to file a federal petition for a writ of habeas corpus. ECF No. 1.[2] Lewis explained that his prison was locked down due to the COVID-19 pandemic, meaning that he could not access the library. *Id*. at 2. This Court denied the motion without prejudice, explaining that Lewis

---

[2]   The Commonwealth construes all of Lewis's *pro se* filings liberally. *See Higgs v. Att'y Gen.*, 655 F.3d 333, 339–40 (3d Cir. 2011).

could use those facts to support an equitable tolling argument and ordering him to file his petition within 30 days. ECF No. 2 at 3. On May 24, 2021, the Court ordered Lewis to file his petition within 21 days or his case would be dismissed. ECF No. 3.

Lewis filed his petition on June 2, 2021. ECF No. 4. He claims that:

(1) his sentence violates due process, because his sentence (i) included a deadly weapons enhancement that exceeded the lawful maximum and (ii) was based on improper factors, such as his family's courtroom behavior during sentencing;

(2) there was insufficient evidence to convict him;

(3) the trial prosecutor committed misconduct in her closing argument; and

(4) his trial counsel was ineffective for failing to move to suppress the trial identification of Lewis as the shooter.

*Id*. at 8–15.

The Court ordered Lewis to show cause why his petition should not be dismissed as time-barred. ECF No. 6. In response, Lewis explained that the prison lockdown in February 2021 meant that any request to use the law library would take at least one week to schedule. ECF No. 7 at 1. He said that his PCRA counsel emailed him on February 23, telling Lewis that he only had two days to file a federal petition. *Id*. Unable to seek help from the law library before time ran out, he filed the extension motion in an attempt to preserve his rights. *Id*. The Court ordered the Commonwealth to respond to Lewis's petition. ECF No. 8.

## DISCUSSION

Although the Commonwealth has concluded that waiving its timeliness defense is appropriate on this record, Lewis is not entitled to

6

relief on the merits of his petition. Most of his claims are procedurally defaulted, as he either failed to first bring them in state court or had them denied based on a state procedural rule, and he hasn't shown a valid basis to excuse those defaults. All the claims also fail on the merits. Put simply, Lewis hasn't raised any meritorious constitutional issues with his trial or his sentencing, so the petition should be dismissed.

\* \* \*

Lewis's petition is subject to the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254. AEDPA limits habeas corpus relief for claims adjudicated on the merits in state court to those that resulted in a decision that was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." *Id*. § 2254(d).

Habeas petitioners are required to exhaust their claims in state court. *Id*. § 2254(b)(1)(A). A claim is exhausted if it was fairly presented in state court through one complete round of the state's review process. *O'Sullivan v. Boerckel*, 526 U.S. 838, 846 (1999). A claim that was not exhausted is deemed procedurally defaulted, and relief is foreclosed unless the petitioner establishes cause and prejudice or a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 749 (1991). Similarly, a claim is procedurally defaulted if it was denied based on a state procedural rule. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).

"A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). The limitation period generally runs from

"the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *Id*. "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation." *Id*. § 2244(d)(2). The AEDPA limitation period, "like other statute of limitations provisions, must be applied on a claim-by-claim basis." *Fielder v. Varner*, 379 F.3d 113, 122 (3d Cir. 2004).

Because exhaustion, procedural default, and timeliness are all affirmative defenses, the state may waive them. *See* 28 U.S.C. § 2254(b)(3); *Sharrieff v. Cathel*, 574 F.3d 225, 227 (3d Cir. 2009) (exhaustion); *Bennett v. Superintendent Graterford SCI*, 886 F.3d 268, 281 n.11 (3d Cir. 2018) (procedural default); *Wood v. Milyard*, 566 U.S. 463, 466 (2012) (timeliness).

## I.   The Commonwealth waives its timeliness defense.

AEDPA requires Lewis's habeas petition to be brought within one year of (as applicable here) the day his conviction became final. That day was July 26, 2016—the last day to seek review of his conviction in the U.S. Supreme Court. U.S. Supreme Ct. R. 13.1. The clock ran for nearly a full year, until the proper filing of Lewis's PCRA petition on July 24, 2017 stopped the clock with just two days remaining. 28 U.S.C. § 2244(d)(2). The clock started again on February 23, 2021, the day the Pennsylvania Supreme Court denied allocatur. At that point, with just two days remaining before the limitations period expired, Lewis acted diligently in an attempt to preserve his habeas rights. He immediately filed a motion with the Court explaining his inability to access the law library, and followed up with more information in response to the Court's order to show cause. ECF Nos. 1, 7.

Based on these facts, the Commonwealth has decided to waive a defense based on the statute of limitations. *See Wood*, 566 U.S. at 466. On this record, it isn't clear why Lewis's counsel filed his state-court PCRA petition when just two days remained on the federal habeas clock, or whether he advised Lewis of this issue in time for Lewis to timely file his petition. And, once the state-court proceedings concluded, it appears that Lewis did the best he could to file a timely habeas petition under the circumstances. Rather than relying on less factually and legally clear timeliness grounds, the Commonwealth concludes that it's better for the parties and the Court to focus on the core of the petition—Lewis's claims, none of which are successful.

## II. Lewis's sentencing claims do not warrant relief.

Lewis first claims that his sentence violates the Constitution. ECF No. 4 at 9. Specifically, he claims that his sentence includes a deadly weapons enhancement that exceeds the lawful maximum, and that his sentence was based on an impermissible factor—the behavior of his family in court during sentencing. *Id*. Neither argument entitles him to relief.

### A. Lewis's claim about the deadly-weapons enhancement is procedurally defaulted and lacks merit.

Lewis's claim related to the deadly-weapons enhancement runs into an immediate obstacle: as he acknowledges, the claim is not exhausted. ECF No. 4 at 9. He argues that his appellate counsel was ineffective: she raised a claim related to the robbery and firearms sentences in post-sentencing motions to the trial court, but not in his direct appeal. *Id*.

But even liberally construing the weapons-enhancement claim as an ineffective assistance of appellate counsel claim, it is procedurally

defaulted. Lewis did not bring this ineffective-assistance claim in his PCRA petition, and so it is not exhausted. To the extent that Lewis claims in his petition that his PCRA counsel was ineffective, that later ineffectiveness cannot establish cause for failure to exhaust this ineffective assistance of *appellate* counsel claim. *See Davila v. Davis*, 137 S. Ct. 2058 (2017).

Even if the Court reached the merits, this claim—viewed on its own or through the ineffective-assistance prism—does not warrant relief because Lewis's sentence is lawful. Pennsylvania law establishes sentencing guidelines that are based on the defendant's criminal history, the gravity of the offense, and any enhancements. *See* 204 Pa. Code § 303.1 *et seq*. One enhancement is whether the defendant used a deadly weapon during the offense. *See id*. § 303.10(a). The guidelines have "no binding effect" on the sentencing court. *See* Ex. A. at 25 (citing *Commonwealth v. Perry*, 32 A.3d 232, 240 (Pa. 2011)).

Lewis's sentence of nine to 18 years on the robbery conviction was at the top end of the aggravated range of the guidelines, including the deadly-weapon enhancement. *See* N.T. 4/28/14 at 5 (prosecutor stating range with deadly weapon enhancement of six and a half to eight years, plus or minus one for aggravating or mitigating factors).[3] This sentence did not exceed the statutory maximum. *See* 18 Pa. C.S. § 1103 (maximum sentence for a first-degree felony like robbery is 20 years' imprisonment). And, as the Superior Court concluded, the trial court "stated adequate reasons for imposing an aggravated-range sentence." *See* Ex. A at 25. On this record,

---

[3] Because there was no deadly-weapon enhancement applied to Lewis's firearm conviction, the Commonwealth does not understand him to be challenging that sentence.

10

Lewis has not shown that the application of the deadly-weapons enhancement violated the Constitution, so his claim also fails on the merits.

### B. The trial court did not sentence Lewis based on his family's conduct during the sentencing hearing.

Lewis also claims that the trial court impermissibly considered his "family and other court spectators misbehaving" during his sentencing. ECF No. 4 at 8. Lewis is presumably referencing the same portion of the sentencing transcript that he cited in his direct appeal. Near the conclusion of the sentencing hearing, the trial court said to Lewis:

> You chose, and this is really what bothers me about this case and what really goes on too often in this city, is that instead of these cases being decided in the courtroom and you yourself, Mr. Lewis, said this and thanked me for being fair. I just followed the rules and allowed witnesses to testify and appropriate evidence to come in and your attorney could fully represent you. But you didn't want that. Your family didn't want that. They didn't want the twelve to decide. They wanted it decided on the street so the case would go away and [the victim] couldn't be found and we would never have a trial . . . **I see your family leaving because they don't want to listen to this part for whatever reason.**

N.T. 4/28/14 at 35–36 (emphasis added). The Superior Court rejected this claim, explaining that the trial court "considered the family members' behavior before sentencing"—including their "intimidating" behavior, at Lewis's direction, to convince the victim not to identify Lewis as the shooter—rather than their behavior in the courtroom. Ex. A at 24–25 (emphasis omitted). It also concluded that the trial court's comments about the family members leaving the courtroom during the sentencing were "observations of conduct occurring in the courtroom." *Id*. at 25.

11

The Superior Court got it right; these comments did not violate due process. The trial court sentenced Lewis based on the facts shown at trial: Lewis directed his family to get the victim to retract his identification, they followed his direction, and the victim testified that he felt pressured and threatened. Lewis did not argue in state court, and does not appear to argue now, that it was improper to consider this pre-trial conduct in determining his sentence. And, as the Superior Court concluded, his family members' behavior in the courtroom during sentencing was not the basis for his sentence. No relief is due.

### III. Lewis's sufficiency-of-the-evidence claim is not exhausted and lacks merit.

Lewis next claims that there wasn't enough evidence at trial to convict him. ECF No. 4 at 10. He points to the victim's preliminary hearing testimony that "Charles," not Lewis, shot him, suggests that there was a problem with the photo evidence used in the case, and argues that descriptions of the shooter by other witnesses aren't consistent with a description of Lewis. *Id.*

Lewis's claim is procedurally defaulted because he failed to exhaust it in state court. To exhaust a claim, a petitioner must "fairly present" the claim through one complete round of the state's review process. *Wilkerson v. Superintendent Fayette SCI*, 871 F.3d 221, 227–29 (3d Cir. 2017). In Lewis's direct appeal, he claimed that the verdict was against the *weight* of the evidence at trial. *See* Ex. A at 20–22. But there are significant differences between a Pennsylvania state-law weight-of-the-evidence claim and a federal constitutional sufficiency-of-the-evidence claim. *See Rainey v. Varner*, 603 F.3d 189, 198–99 (3d Cir. 2010) (citing *Commonwealth v. Widmer*,

744 A.2d 745, 751 (Pa. 2000)). Thus, Lewis's "[p]resentation of a weight claim [did] not exhaust a sufficiency claim." *Id*. at 199.

His claim also fails on the merits. A sufficiency claim fails if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Under that standard, a rational trier of fact could have convicted Lewis. The victim testified that Lewis pulled a gun, told him to hand over his money, and shot him repeatedly when the victim did not do so. The victim identified Lewis from Facebook pictures and again on the witness stand. A man who identified himself as "Tone"—Lewis's nickname on Facebook—told a detective (who he was led to believe was the victim) that it "wasn't supposed to go down like that." After his arrest, Lewis directed friends and family to pressure the victim to identify someone else as the shooter. And Lewis had a prior conviction that prohibited him from possessing firearms. *See* N.T. 11/1/13 at 18–19. This evidence is sufficient to sustain Lewis's attempted murder, robbery, and firearms convictions. *See Commonwealth v. Robertson*, 874 A.2d 1200, 1207 (Pa. Super. Ct. 2005) (attempted murder requires proof that defendant "with a specific intent to kill took a substantial step towards that goal"); 18 Pa. C.S. § 3701(a)(1) (elements of robbery); *id*. § 6105 (elements of crime of possession of firearm by prohibited person).

### IV. Lewis's prosecutorial misconduct claim is not exhausted and lacks merit.

Next, Lewis claims that the prosecution committed misconduct during closing arguments. ECF No. 4 at 12. Recall that Lewis made phone calls to

13

his family from jail shortly after his arrest, directing them to get the victim to retract his identification. While discussing these calls in closing, the trial prosecutor said the following:

> I try to think about what I would do if I was accused of a crime I didn't commit. I think about what my first phone call would be, right? . . . My first phone call is going to be to my husband, and I am going to cry like a baby . . . That would by my first phone call. You know, I bet you something along those lines would be your first phone call, too, because that is what an innocent person says.

N.T. 10/31/13 at 45–47. The trial prosecutor contrasted these hypothetical statements to the statements made by Lewis to his family. *Id*. at 47.

This claim is procedurally defaulted. Although Lewis raised this claim on direct appeal, the Superior Court concluded that Lewis had waived the claim by failing to (1) contemporaneously object to the prosecutor's statements, (2) subsequently object to the statements during a later portion of the closing argument, and (3) request a cautionary instruction. *See* Ex. A at 20. Because the claim was denied based on a state procedural rule, it is procedurally defaulted. *See Edwards*, 529 U.S. at 451.

The claim also lacks merit. Lewis argues that the trial prosecutor's comments were either improper vouching or burden-shifting. But the trial prosecutor did not "assure the jury that testimony of a [state] witness is credible," as an improper-vouching claim requires. *See United States v. Lee*, 612 F.3d 170, 195 (3d Cir. 2010). Nor did she "comment on [Lewis's] failure to testify [or] improperly suggest that that [Lewis] has the burden to produce evidence." *See United States v. Balter*, 91 F.3d 427, 441 (3d Cir. 1996). On this record, Lewis has failed to show that the prosecutor's comments were either inappropriate or, if they were, that they "so infec[ted] the trial

14

with unfairness as to make the resulting conviction a denial of due process." *Greer v. Miller*, 483 U.S. 756, 765 (1987). So no relief is due on this claim.

## V. Lewis's ineffective-assistance claim is procedurally defaulted.

Finally, Lewis argues that his trial counsel was ineffective for failing to move to suppress the victim's identification of Lewis. ECF No. 4 at 13–14. He points to the victim's identification of "Charles" at the preliminary hearing, eyewitness identifications of someone called "Yah Yah," and an "improper lineup with only [Lewis] in it" as grounds for such a motion. *Id*. at 14. As Lewis acknowledges, this claim is procedurally defaulted because he didn't bring it in state court first. So he argues that the default should be excused under *Martinez v. Ryan*, 566 U.S. 1 (2012), because PCRA counsel was ineffective.

Lewis cannot avail himself of this exception because *Martinez*'s first prong requires his defaulted claim to have "some merit," and his defaulted claim does not. *Workman v. Superintendent Albion SCI*, 915 F.3d 928 (3d Cir. 2019). Pennsylvania law allows a defendant to move to suppress "any evidence alleged to have been obtained in violation of the defendant's rights." 234 Pa. Code § 581(A). Nothing about the victim's trial identification of Lewis violated his constitutional rights, as the victim's prior identification of "Charles" and the eyewitness identifications of "Yah Yah" do not implicate Lewis's constitutional rights. There is also no evidence that the police performed an improper lineup. The police separately showed both the victim and his wife a photo array with eight pictures in it, in which both identified Lewis. N.T. 10/29/13 at 132–33; N.T. 10/30/13 at 66–67. Lewis does not explain what about this photo array was "suggestive and unnecessary" or why the identifications should be

15

excluded. *See Perry v. New Hampshire*, 565 U.S. 228, 239 (2012). To the extent that Lewis's claim is based on the Facebook photos shown to the victim by his sister-in-law, he offers no basis to have excluded that identification from the trial, as that amateur detective work is "without the taint of improper state conduct." *See id*. at 245. Any motion to suppress would have been fruitless, so trial counsel didn't perform inadequately by not making the motion. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Because Lewis's defaulted claim does not have "some merit," his procedural default cannot be excused. No relief is due.

## CONCLUSION

For these reasons, the Commonwealth respectfully requests that the Court dismiss Lewis's petition with prejudice and without a hearing.

                Respectfully submitted,

                */s/ Peter F. Andrews*
                PETER F. ANDREWS
                Assistant District Attorney
                Federal Litigation Unit
                Philadelphia District Attorney's Office
                Three South Penn Square
                Philadelphia, PA 19107
                Email: peter.andrews@phila.gov

## CERTIFICATE OF SERVICE

I certify that on May 9, 2022 a copy of this response was served on the petitioner by placing it, first-class postage prepaid, in the United States mail, addressed to:[4]

>Smart Communications/PADOC
>Antonio Lewis / LM-7916
>SCI – Forest
>P.O. Box 33028
>St. Petersburg, FL 33733

>/s/ *Peter F. Andrews*
>Peter F. Andrews
>Assistant District Attorney
>Federal Litigation Unit
>Philadelphia District Attorney's Office
>Three South Penn Square
>Philadelphia, PA 19107

---

[4] The respondents are required by Pennsylvania Department of Corrections policy to mail this filing to the petitioner using the Smart Communications address. Under the applicable policy, "[a]ll incoming inmate mail (other than privileged) must be sent to the Department's contracted incoming inmate mail processor," which is Smart Communications. *See* Pa. DOC, DC-ADM 803, section 1 (C)(1). Respondents' legal filings are not "privileged" because respondents' counsel does not represent the petitioner or have any other relationship with the petitioner that would make their communications privileged. Therefore, DOC's policy prohibits the respondents from mailing documents directly to the petitioner at the address of the prison where the petitioner is in custody.